| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID JOHN SCHWARTING,<br><br>Defendant. | CR. 14-50100-02-JLV<br><br>ORDER |

## INTRODUCTION

A grand jury returned an indictment alleging defendant David John Schwarting and a codefendant conspired to distribute methamphetamine in violation of federal law. (Docket 1). Since his indictment, defendant has submitted numerous filings. He has six pending motions. (Dockets 96, 123, 216, 218, 224 & 229). In this order, the court resolves his motion to suppress evidence and to dismiss the indictment on statutory and constitutional speedy trial grounds. (Docket 96 & 218).

Defendant's suppression motion was referred to Magistrate Judge Daneta Wollmann for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order dated June 11, 2007. Magistrate Judge Wollmann held a suppression hearing and issued a report and recommendation. (Dockets 143 & 163). Defendant filed timely objections to the report and recommendation. (Docket 174).

**ANALYSIS**

**I. Motion to dismiss the indictment**

    **a. Speedy Trial Act**

The Speedy Trial Act ("the Act"), 18 U.S.C. §§ 3161-74, "requires that trial begin within 70 days after a defendant is charged or makes an initial appearance unless the running of the time is stopped for reasons set out in the statute." United States v. Lucas, 499 F.3d 769, 782 (8th Cir. 2007) (en banc). The Act lists the periods of time excludable from the 70 days. 18 U.S.C. § 3161(h). One is the "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion[.]" 18 U.S.C. § 3161(h)(1)(D). Another "statutorily approved reason[ ] for days to be excluded from the speedy-trial calculation is an 'ends-of-justice' continuance: A trial may be delayed if a district court finds the ends of justice so require and 'sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.' " United States v. Adejumo, 772 F.3d 513, 521 (8th Cir. 2014) (quoting 18 U.S.C. § 3161(h)(7)(A)). This category of excludable time can result from "a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government[.]" 18 U.S.C. § 3161(h)(7)(A). "Once those days are excluded, however, 'if the total number of non-excludable days exceeds seventy, then the district court must dismiss the indictment upon the

defendant's motion.' " Adejumo, 772 F.3d at 521 (quoting United States v. Villarreal, 707 F.3d 942, 953 (8th Cir. 2013)). "It is the defendant's burden to show the motion should be granted." Id.

Defendant argues the Act's 70-day requirement has been violated and moves to dismiss the indictment on that ground. (Dockets 218 & 219 at pp. 1-2) ("speedy trial motion to dismiss"). Based on defendant's calculation of the excluded time under the Act, the 70-day period has been exceeded by several hundred days. (Docket 219 at p. 2). The government disagrees with defendant and contends only 46 of the 70 days available under the Act have passed. (Docket 238 at p. 11). According to the government, 19 days elapsed before the first period of excludable time—and with the rate defendant moved or consented to continuances or filed various other motions—only 27 more non-excludable days passed until he filed this motion to dismiss. Id.

A grand jury indicted defendant and his codefendant John Lee Harold on October 21, 2014, for conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1) & 841(b)(1)(B).[1] (Docket 1). Defendant appeared before Magistrate Judge John Simko on October 29, 2014. (Docket 20). Nineteen days after his appearance, on November 17, 2014, defendant filed a motion for a continuance. (Docket 28). Those 19 days are not excludable, so as of November 17, 2014, 51 days remained from the 70 set by the Act. The court granted defendant's motion for a continuance and found "that the ends of justice served by continuing this trial outweigh the best

_____

[1]Mr. Harold eventually entered into a plea agreement and was sentenced on March 24, 2017. (Docket 187).

interests of the public and the defendants in a speedy trial insofar as defense counsel has made known to the court that additional time is needed to locate witnesses, to complete the investigation and to prepare for trial." (Docket 29 at p. 1). This is an "ends of justice" continuance excluded from the Act's 70-day period. See 18 U.S.C. § 3161(h)(7)(A); Adejumo, 772 F.3d at 521. The order granting the continuance set January 6, 2015, as the deadline for filing another motion for a continuance. (Docket 29 at p. 2). It set the tentative jury trial date as January 27, 2015, meaning if no more continuances were granted and trial did not occur on that date, the speedy trial clock would begin running and add to the 19 non-excluded days. Id.

On December 15, 2015, codefendant Harold filed a motion seeking a continuance. (Docket 32). The court granted the motion, noted defendant did not file an objection to the continuance and provided an ends of justice basis for its order. (Docket 33). Defendant need not file a motion for a continuance or formally join Mr. Harold's motion, because "[e]xclusions of time attributable to one defendant apply to all codefendants." United States v. Mallett, 751 F.3d 907, 911 (8th Cir. 2014) (internal quotation marks omitted).

Prior to the deadline for submitting another continuance motion, Mr. Harold filed a motion toward that end. (Docket 36). The court granted the motion, indicated defendant filed no objection and detailed an ends of justice foundation for the continuance. (Docket 37). The same sequence of events—Mr. Harold motions for a continuance before the deadlines, defendant does not object and the court grants the continuance based on the ends of justice—

occurred 11 more times.  (Dockets 40, 47, 53, 56, 60, 62, 66, 69, 72, 74 & 82).

The court entered the last order in that sequence on July 13, 2016.  (Docket

82).  In the July 13, 2016, order the court set the case for a jury trial beginning

September 6, 2016.  Id. at p. 2.  Because the court granted continuances a

defendant requested and grounded its order in the ends of justice, the time

between November 17, 2014, and the last-scheduled jury trial date,

September 6, 2016, is excluded from the Act's 70-day period.  See 18 U.S.C.

§ 3161(h)(7)(A).

On July 12, 2016, defendant filed two motions to suppress evidence,

along with extensive briefs and exhibits.  (Dockets 78, 79, 80 & 81).  The

motions were not timely and defendant did not show good cause under Federal

Rule of Criminal Procedure 12(c)(3), so the court denied them.  (Docket 83).

Defendant then filed a motion for a continuance—the court granted it based on

the ends of justice and set the jury trial for October 4, 2016.  (Docket 92).

Before trial commenced, defendant filed his now-pending motion to suppress.

(Docket 96).

As noted earlier, defendant's suppression motion was referred to the

magistrate judge for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) and the standing order dated June 11, 2007.  Defendant also

filed a motion to compel on the same day as his suppression motion, (Docket

94), and he submitted a motion to dismiss the indictment based on

"outrageous government conduct[.]"  (Docket 123 at p. 1) ("first motion to

dismiss").  The motion to compel was eventually denied as moot and the first

5

motion to dismiss is pending before the magistrate judge.  (Dockets 98 & 126).
On December 14, 2016, the magistrate judge held a hearing on defendant's
suppression motion.  (Docket 143).

As previously stated, a "delay resulting from any pretrial motion, from
the filing of the motion through the conclusion of the hearing on, or other
prompt disposition of, such motion" is excluded under the Act.  18 U.S.C.
§ 3161(h)(1)(D).  "If a district court holds a hearing on a motion . . . the
'hearing' clause controls and the time between the filing and the hearing is
thus excludable."  United States v. Williams, 557 F.3d 943, 951 (8th Cir. 2009).
"After the hearing is over, the district court might require supplemental filings
from the parties in order to properly resolve the motion.  The time during which
the district court is awaiting these filings is excluded."  Id. at 952 (internal
citation omitted).  "[I]f the court requires time to consider the motion after all
information is available, this time is limited [for purposes of exclusion of time]
to 30 days under 18 U.S.C. § 3161(h)(1)(H)."  United States v. Herbst, 666 F.3d
504, 510 n.3 (8th Cir. 2012) (internal quotation marks omitted).

On January 17, 2017, the magistrate judge issued a report and
recommendation on defendant's suppression motion.  (Docket 163).  Defendant
filed his objections on February 7, 2017.  (Docket 174).  Based on the "hearing
clause" in the Act, the time between defendant's filing of his suppression
motion and his objections to the report and recommendation is excluded from
the 70-day requirement.  Williams, 557 F.3d at 951-52; see 18 U.S.C.
§ 3161(h)(1)(D).  The "prompt disposition" clause in the Act excludes 30 days

following the date defendant filed his objections.  <u>Herbst</u>, 666 F.3d at 509-10, n.3; <u>see</u> 18 U.S.C. §§ 3161(h)(1)(D) & (H).[2]

Defendant contends the last segment of excludable time is the 30 days after he submitted his objections.  (Docket 219 at p. 2).  Under defendant's calculation, the speedy trial clock began to run again on March 9, 2017.  <u>See</u> 18 U.S.C. §§ 3161(h)(1)(D) & (H).  But that is an incomplete picture of this case under the Speedy Trial Act.

Defendant's calculation is wrong because he ignores a motion that pushes the period of excluded time beyond March 9, 2017.  It is his first motion to dismiss based on outrageous government conduct.  (Docket 123).  Defendant filed that motion on November 7, 2016.  <u>Id.</u>  The government requested and was granted several extensions before filing its response on February 3, 2017.  (Docket 173).  Defendant requested more time to file his reply, (Docket 177), and the magistrate judge granted the request and permitted defendant to file his reply two weeks after the transcript of a hearing on the motion was filed.  (Docket 177).  On May 22, 2017, the transcript was filed, so defendant was to submit his reply on June 5, 2017.  (Docket 194).  Defendant did not file a reply.  As of June 5, 2017, "all information [on the motion was] available," so the court could begin considering the first motion to dismiss.  <u>See</u> <u>Herbst</u>, 666 F.3d at 510 n.3.  The "prompt disposition" clause

---

[2]The magistrate judge filed her report and recommendation 34 days after the hearing, so four potentially non-excludable days passed because the "prompt disposition" clause activated once the hearing occurred.  But, as the court explains below, another motion was pending during this time, making those four days excludable.

excludes 30 days following that date, making July 5, 2017, the date at which the excludable period is over and the speedy trial clock starts running for the first time since November 17, 2014. See id.; 18 U.S.C. §§ 3161(h)(1)(D) & (H).

On August 1, 2017, defendant filed two motions. One requests a Franks[3] hearing and the other is his speedy trial motion to dismiss the court is resolving here. (Dockets 216 & 218).[4] Between July 5, 2017, and August 1, 2017, 27 days elapsed. Those days are not excludable under the Act and add to the previously counted 19 days. Because 46 non-excludable days have passed since defendant's initial appearance, 24 days remain under the Speedy Trial Act's 70-day requirement.

The court denies defendant's motion to dismiss the indictment based on the Speedy Trial Act.

**b. Sixth Amendment**

"Sixth Amendment and Speedy Trial Act challenges for delay are reviewed independently of one another." Williams, 557 F.3d at 948 (citation and internal quotation marks omitted). "As to the separate Sixth Amendment speedy trial claim, [the United States Court of Appeals for the Eighth Circuit] stated that

---

[3]"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Franks v. Delaware, 438 U.S. 154, 155-56 (1978).

[4]Defendant went on to file two more motions: another motion to dismiss the indictment and a motion for a hearing on that matter. (Dockets 224 & 229). Because his Franks hearing motion and other filings request hearings which have yet to occur, it is clear the excludable period that started on August 1, 2017, has not stopped.

'[i]t would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not.' " United States v. Shepard, 462 F.3d 847, 864 (8th Cir. 2006) (quoting United States v. Titlbach, 339 F.3d 692, 699 (8th Cir. 2003)). A defendant's Sixth Amendment right to a speedy trial " 'attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences.' " United States v. Erenas-Luna, 560 F.3d 772, 776 (8th Cir. 2009) (quoting United States v. McGhee, 532 F.3d 733, 739 (8th Cir. 2008)). The Sixth Amendment does not specify a time limit in which an accused must be brought to trial. See U.S. Const. amend. VI.

Because of the "vague" nature of the Sixth Amendment right, "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." Barker v. Wingo, 407 U.S. 514, 522 (1972). To assist courts in evaluating speedy trial claims, the Barker Court established a four-factor balancing test "in which the conduct of both the prosecution and the defendant are weighed." Id. at 530. These factors are the (1) length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) the prejudice to the defendant. Id.

### (1) Length of delay

Because the "length of the delay is to some extent a triggering mechanism," courts need not inquire into the remaining factors "[u]ntil there is some delay which is presumptively prejudicial[.]" Id. "To trigger speedy trial analysis, the defendant must allege the interval between accusation and trial

has crossed a line dividing ordinary from presumptively prejudicial delay."
Mallett, 751 F.3d at 913 (internal quotation marks omitted).

Defendant was indicted on October 21, 2014, and trial has yet to occur, so the delay has been approximately three years. (Docket 1). That is presumptively prejudicial. See Mallett, 751 F.3d at 913-14 (finding 17 months presumptively prejudicial); United States v. Aldaco, 477 F.3d 1008, 1019 (8th Cir. 2007) (finding three and one-half years presumptively prejudicial). Consequently, the court must analyze the remaining Barker factors.

### (2) Reason for delay

The court must "consider the reasons for the delay and evaluate whether the government or the criminal defendant is more to blame." Mallett, 751 F.3d at 914 (internal quotation marks omitted). Because this issue is fact-intensive, a look at applicable Eighth Circuit cases is helpful. In the Mallett case, the defendant was more responsible for the delay:

> By changing his plea, canceling his change of plea, and moving for various continuances, Allen delayed trial for twenty weeks. Approaching a trial date, Allen's motion to dismiss delayed trial another eleven weeks. While the government's first and second superseding indictments delayed the trial date seven weeks and three weeks, respectively, Allen exacerbated the delay stemming from the first superseding indictment by requesting a continuance of over eight additional weeks. Although the government bears some responsibility, the blame for a majority of the pretrial delay is borne by Allen.

Id.

And in United States v. McGhee, the Eighth Circuit held:

> As for the second prong, McGhee is responsible for most of the delays. He moved for two continuances, a mental competency evaluation, an emergency hearing to withdraw his request for

determination of mental competency, and to dismiss the indictment. The government, however, requested one continuance because a witness was ill and unable to testify. "Further, there is no evidence that the Government intentionally caused any delay or filed pretrial motions to cause delay in order to gain a tactical advantage." [Shepard, 462 F.3d at 864.]

McGhee, 532 F.3d at 739.

The court finds this case is comparable to Mallett and McGhee. Defendant has filed or not objected to the filing of 15 motions for continuances. (Dockets 28, 32, 36, 39, 43, 49, 55, 58, 61, 64, 67, 70, 73, 76 & 90).[5] Based on these motions, defendant is accountable for the delay from November 17, 2014, to October 6, 2016, the trial date he requested in his last continuance motion asking to move the trial date back one month. (Docket 90). On August 11, 2016, defendant filed his suppression motion, and on November 7, 2016, he filed his first motion to dismiss the indictment, both of which are pending. (Dockets 96 & 123). Defendant is on his fourth attorney, due in part to conflicts of interest and in part to breakdowns in attorney-client communication. (Dockets 51, 89 & 179).

Defendant's core argument is the government caused this case's delay by failing to provide him with video evidence in a viewable form. (Docket 219 at pp. 4-5). The evidence at issue is video and audio from a patrol vehicle during the traffic stop of defendant on September 13, 2014. (Docket 209). Defendant claims the government failed to provide him with a copy of the evidence until

_____

[5]The court is aware defendant's codefendant Mr. Harold filed most of these continuance motions. But the important point is defendant never objected to the motions. Defendant twice filed a waiver of his speedy trial rights when Mr. Harold submitted a motion for a continuance. (Dockets 42 & 45).

December 1, 2016, and did not give him a viewable form of the evidence until May 12, 2017.  Id. at p. 3.  This issue relates to defendant's most recent motion to dismiss the indictment.  (Docket 224).  The government explains it "has made and will make all efforts to ensure defense counsel is provided all discoverable information in this matter."  (Docket 193 at p. 3).  In his speedy trial motion to dismiss, defendant asserts "[t]he facts related to the cause of delay are expected to be more fully developed in an evidentiary hearing on the matter."  (Docket 219 at p. 5).  Defendant may be able to develop this issue in an evidentiary hearing, but on this record, he fails to show the government is responsible for the bulk of this case's delay.  Even if the court assumes the government delayed the case in the time it took to disclose the video evidence, defendant and Mr. Harold still filed motions for continuances for nearly two years and defendant litigated a suppression motion before the magistrate judge for approximately half of a year.  The record does not demonstrate "that the Government intentionally caused any delay or filed pretrial motions to cause delay in order to gain a tactical advantage."  Shepard, 462 F.3d at 864.  But the record does establish that defendant's nonstop motions account for the delay.

### (3)  Assertion of speedy trial right

Defendant first asserted his right to a speedy trial on August 1, 2017.  (Docket 218).  "Nothing in the record indicates [defendant] acted to protect his speedy trial rights earlier [than August 1, 2017]."  Mallett, 751 F.3d at 914.

Defendant's "substantial contributions to the pretrial delay belie his later attempts to assert his speedy trial rights." Id.

### (4) Prejudice

"Finally, the court must consider whether the delay prejudiced [defendant].  In doing so, the court should assess the interests served by the speedy trial right, which are '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' " United States v. Sims, 847 F.3d 630, 636 (8th Cir. 2017) (quoting Barker, 407 U.S. at 532).  "A showing of actual prejudice is required if the government exercised reasonable diligence in pursuing the defendant." Erenas-Luna, 560 F.3d at 778-79.  "Where the government has been negligent, however, prejudice can be presumed if there has been an excessive delay." Id.  "Whether or not a showing of prejudice is required in every case, [the Eighth Circuit has] been clear that the degree of prejudice required, if any, depends on the defendant's showing under the preceding Barker factors." Sims, 847 F.3d at 636.

The court does not presume this case's delay prejudiced defendant because the record does not establish the government has been negligent.  See Erenas-Luna, 560 F.3d at 778-79.  Nearly all of the delay is attributable to defendant, and defendant has not demonstrated the government acted negligently in taking time to provide him with particular video evidence.  See supra Section I.b.(2).  As a result, defendant must show actual prejudice "under the preceding Barker factors." Sims, 847 F.3d at 636.

In arguing he suffered prejudice, defendant emphasizes the length of his incarceration and the negative effects of that on his life. (Docket 219 at pp. 6-7). The court takes seriously that defendant has been in custody throughout this case's lifespan and the negative impact the entire experience has had on him. The problem is—through continuance motions he and his codefendant filed—he asked the court to delay the case for close to two years. See supra section I.a. He then filed a suppression motion and his first motion to dismiss the indictment. (Dockets 96 & 123). After defendant creates that record, he cannot now claim his extensive incarceration and its resulting negative effect constitute actual prejudice.

Of the three interests listed above, "prejudice to the last is the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Erenas-Luna, 560 F.3d at 778 (internal quotation marks omitted). Defendant argues the government's failure to promptly provide him with video evidence from the police stopping his car resulted in actual prejudice. (Docket 219 at pp. 7-9). Based on the record, defendant has not demonstrated he would not have sought to continue the case for approximately two years and file motions extending the life of the case but-for the government failing to disclose video evidence of police stopping his car.

Defendant did not bring this specific piece of evidence to the court's attention until an *ex parte* hearing before the magistrate judge on July 22,

2016.[6]  (Dockets 87 (minute entry) & 197 (transcript)).  Defendant then made this video evidence known to this court when he filed a motion to compel discovery on August 11, 2016.  (Docket 94).  The parties agreed during a December 14, 2016, hearing the magistrate judge conducted that the motion to compel could be denied as moot.  (Docket 162).  Other than having to file a motion to receive the video evidence, defendant does not demonstrate how the time it took for him to receive it impaired his ability to present a defense.[7]

Defendant presents "vague claims" about the actual prejudice he suffered, which "are insufficient, without more, to satisfy his burden."  See Erenas-Luna, 560 F.3d at 779; see also Young v. United States, 953 F. Supp. 2d 1049, 1064 (D.S.D. 2013) ("The delay did not limit his defense.  Young, for example, has not even attempted to identify witnesses helpful to his defense who became unavailable due to the delay.").

Although the extensive duration of this case is presumptively prejudicial, the majority of the Barker factor analysis supports finding no Sixth

---

[6]Defendant claims he raised the issue at the *ex parte* hearing on June 25, 2015, where the magistrate judge granted his motion to substitute counsel. (Docket 219 at p. 8).  However, defendant simply claimed he wanted to "be able to see [his] discovery." (Docket 196 at p. 3).  Defendant stated, "[t]he government's discovery obviously, yes, I cannot have that; but the discovery that the state had for me [in a different case] I can have that." Id. at p. 4.  The primary reason for the hearing was defendant's inability to trust and effectively communicate with his attorney at the time.  Id. at pp. 4-5.  Defendant did not pinpoint the video evidence during the hearing.

[7]Defendant's suppression motion—which is unrelated to the video evidence delay—was being litigated during the same time.  The suppression motion delayed the case for independent reasons caused by defendant. Defendant's argument implies the fact that there was a delay in receiving the video means he suffered prejudice.  However, defendant must show that the delay itself caused prejudice—not just that a delay occurred.

Amendment violation.  The court denies defendant's motion to dismiss the indictment based on a violation of his Sixth Amendment right to a speedy trial.

## II. Suppression motion

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  Id.

Defendant submitted objections to the magistrate judge's findings of fact and conclusions of law.  (Docket 174).  Defendant's factual and legal objections revolve around four separate Fourth Amendment events:  (1) stopping defendant's car; (2) detaining defendant; (3) searching defendant's person; and (4) issuance of the search warrant by a South Dakota state court judge.  The court analyzes each in turn after establishing the background facts.

On the morning of September 13, 2014, South Dakota Highway Patrol Trooper Zac Bader pulled over a vehicle for speeding.  (Docket 163 at p. 2). John Harold[8] and Billie Jo Pentilla occupied the car.  Id.  During the stop, Trooper Bader's drug dog alerted at the car, so he searched the vehicle and found several ounces of methamphetamine.  Id.  Mr. Harold stated he bought the methamphetamine from a man at a hotel in Rapid City, South Dakota.  Id.

---

[8]This is the John Harold the court refers to earlier who was a codefendant in this case.

According to Mr. Harold, the man's name was "Dave Schwartein," and Mr. Harold had purchased drugs from him many times.  Id.  Mr. Harold and Dave met approximately five weeks earlier through work with Sands Drywall Company in Sioux Falls, South Dakota.  Id.

Mr. Harold was transported to a location where Department of Criminal Investigation ("DCI") Agent Bob Palmer interviewed him about his methamphetamine transactions with Dave.[9]  Id. (citing Docket 79-1).  Mr. Harold would meet Dave in the parking lot of a hotel near the interstate with a Minerva's restaurant inside, and Dave would bring a bag of methamphetamine to him.  Id.  Mr. Harold believed Dave may be staying at the Ramkota Hotel, but he was not certain.  Id. at p. 3 (citing Docket 79-1).  A week before he was pulled over, Mr. Harold paid Dave by depositing $9,000 in an account name and number Dave provided.  Id.  Another payment method was sending a money gram via Wal-Mart to a name Dave supplied.  Id.  This occurred for approximately five weeks, and Mr. Harold paid Dave over $20,000.  Id.  Mr. Harold believed Dave had a girlfriend from Colorado.  Id.  He had seen Dave driving a maroon Cadillac.  Id.

After collecting this information from Mr. Harold, Agent Palmer provided it to DCI Special Agent Dan Byron.  Id.  Special Agent Byron indicated DCI had an individual named "David Schwarting" in its system.  Id.  Special Agent Byron advised that a maroon Cadillac registered to David Schwarting was at a residence listed under David Schwarting in Sioux Falls, South Dakota.  Id.

_____

[9]Mr. Harold indicated he did not know Dave's last name, but believed it was pronounced "Schwartein."  (Docket 79-1 at p. 4).

Agent Palmer contacted the Ramkota Hotel in Rapid City, South Dakota. The management stated a man named David Schwarting was in room number 2713, registered a grey Jeep with Colorado license plates and was scheduled to check out the next day, September 14, 2014. Id. at p. 4.

Pennington County Sheriff Investigator BJ George arrived at the Ramkota Hotel at approximately 8 p.m. on September 13, 2014. Id. He observed a grey Jeep Grand Cherokee with Colorado license plates reading 874TYR parked outside room number 2713. Id. Around 8:50 p.m. the grey Jeep pulled out of its spot and left the parking lot. Id. Deputy George pulled over the vehicle at a nearby gas station. Id. Defendant and his girlfriend, Adelita Urioste, were in the car. Id.

### a. Stop of the car

The magistrate judge determined law enforcement's stop of defendant's car did not violate the Fourth Amendment. Id. at pp. 6-11. Defendant objects to this conclusion and claims law enforcement violated his Fourth Amendment rights by stopping his car. (Docket 174 at p. 5).

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"The Fourth amendment permits an investigative stop of a vehicle if officers have a reasonable suspicion the vehicle or its occupants are involved in

18

criminal activity. If police have reasonable suspicion, they may briefly stop an individual and make reasonable inquiries aimed at confirming or dispelling the suspicion." United States v. Williams, 796 F.3d 951, 957 (8th Cir. 2015) (internal quotation marks and citation omitted). "Reasonable suspicion must be supported by more than a mere hunch, but the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard." United States v. Roberts, 787 F.3d 1204, 1209 (8th Cir. 2015) (internal quotation marks and citation omitted). Courts "consider the totality of the circumstances when determining whether an officer has a particularized and objective basis to suspect wrongdoing." United States v. Robinson, 670 F.3d 874, 876 (8th Cir. 2012).

Defendant argues law enforcement lacked reasonable suspicion because they had not personally observed any suspicious or criminal activity before stopping his car. (Docket 174 at p. 5). But defendant's characterization of the reasonable suspicion standard is higher than the law in the Eighth Circuit. Personally observing suspicious activity is not required; indeed, "[p]olice officers may rely upon notice from another police department that a person or vehicle is wanted in connection with the investigation of a felony when making a [ ] stop, even if the notice omits the specific articulable facts supporting reasonable suspicion." United States v. Smith, 648 F.3d 654, 659 (8th Cir. 2011) (internal quotation marks and alteration omitted).

Defendant claims Mr. Harold was not a reliable source of information. (Docket 174 at p. 5). Law enforcement's corroboration of Mr. Harold's information indicates otherwise. Mr. Harold told Agent Palmer a man with defendant's name had repeatedly sold him methamphetamine and might be staying at the Ramkota Hotel. He stated he met defendant in Sioux Falls and defendant drove a maroon Cadillac. Special Agent Byron confirmed defendant was in DCI's system, had a maroon Cadillac registered in his name and a residence in Sioux Falls listed under his name. Agent Palmer corroborated defendant had room 2713 at the Ramkota Hotel and registered with the hotel a grey Jeep with Colorado plates. Once the grey Jeep parked outside room 2713 drove away, Deputy George stopped it. Mr. Harold's information about defendant was accurate, and law enforcement corroborated the information and more before stopping defendant's vehicle. Law enforcement acted on much "more than a mere hunch[.]" See Roberts, 787 F.3d at 1209. They had "specific and articulable facts[,]" Terry v. Ohio, 392 U.S. 1, 21 (1968), supporting their reasonable suspicion that defendant's "vehicle or its occupants [were] involved in criminal activity." Williams, 796 F.3d at 957.

The court finds law enforcement's stop of defendant's car did not violate the Fourth Amendment. The court denies defendant's objections and adopts the magistrate judge's report and recommendation on this issue.

**b. Detaining and searching defendant**

After Deputy George stopped defendant's vehicle, he searched defendant's person. (Dockets 160 at pp. 72-74, 78-80 & 163 at pp. 12-16). He

also examined defendant's wallet. (Docket 160 at pp. 78-80). Deputy George testified defendant consented to the search. Id. at pp. 72-74, 84-86. At some point Deputy George placed defendant in handcuffs and put him in a patrol vehicle. Id. at pp. 72-74, 79-80. Deputy George testified he was not certain whether he performed a search of defendant's person before or after he put on handcuffs and secured defendant in a patrol vehicle. Id. at pp. 79-80. The magistrate judge determined "[t]he search [of defendant's person] occurred prior to Defendant being put in handcuffs and placed in to the back of a police vehicle." (Docket 163 at pp. 14-15).

Before analyzing whether defendant consented to a search of his person, the magistrate judge concluded law enforcement's treatment of defendant constituted a de facto arrest. (Docket 163 at pp. 12-14). The magistrate judge determined the arrest was consistent with the Fourth Amendment because it was supported by probable cause. Id. The magistrate judge went on to conclude defendant voluntarily consented to the search of his person. Id. at pp. 14-17. The report and recommendation states, "[e]ven though the investigatory stop later turned into a de facto arrest, this court will analyze the search of Defendant's person under the consent doctrine, rather than as a search incident to arrest." Id. at p. 15.

Defendant contends he did not consent to law enforcement searching his person. (Docket 174 at pp. 2-4, 5-6). He objects to the finding that the search occurred before he was put in handcuffs and placed in the patrol car. Id. at p. 3.

Deputy George's testimony on direct examination was he performed a search of defendant's person with defendant's consent before handcuffing him and putting him in a patrol car. (Docket 160 at pp. 72-74). Putting consent aside, the court will analyze Deputy George's actions.

"Having conducted a lawful traffic stop," law enforcement can detain a person "for a time reasonably necessary to conduct a limited investigation." United States v. Mendoza, 677 F.3d 822, 828 (8th Cir. 2012). "At a minimum, a reasonable investigation can include asking for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose." Id. (internal quotation marks omitted).

However, "a de facto arrest occurs when the officers' conduct is more intrusive than necessary for an investigative stop." United States v. Hill, 91 F.3d 1064, 1070 (8th Cir. 1996) (internal quotation marks omitted). "[B]oth investigative stops and arrests are seizures, but an investigative stop must be supported by reasonable, articulable suspicion that criminal activity is afoot, whereas an arrest must be supported by probable cause." United States v. Bloomfield, 40 F.3d 910, 916, (8th Cir. 1994) (en banc) (internal quotation marks omitted). "There is no clear line between investigative stops and de facto arrests." United States v. Sanford, 813 F.3d 708, 712 (8th Cir. 2016) (per curium). "During a [ ] stop, officers must use the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the [ ] stop." Id. at 713 (internal quotation marks omitted).

The issue is whether Deputy George's actions leading up to the initiation of a search of defendant's person were "the least intrusive means . . . that [were] reasonably necessary to achieve the purpose of the [ ] stop." Id. (internal quotation marks omitted).  Although a central factor in a stop becoming an arrest is duration, the officer's conduct is also important.  See Bloomfield, 40 F.3d at 917 ("Time is an important factor in distinguishing between an investigative stop and a *de facto* arrest[.]").  Critical to this case is whether "the officer's *conduct* is more intrusive than necessary[.]" Sanford, 813 F.3d at 712-13 (emphasis added).  Deputy George would have conducted a "reasonable investigation" if he requested defendant's "driver's license, the vehicle's registration, [and inquired] about [defendant's] destination, route, and purpose." Mendoza, 677 F.3d at 828.

Deputy George's investigative stop exceeded this early on.  He testified, "[o]nce [defendant's] vehicle came to a stop, the female got out of the driver's side . . . At that point in time, Detective Baker and I then made contact with the occupants, identified ourselves as law enforcement, and detained the two occupants." (Docket 160 at p. 72).  He also stated, "when we approached them, they were detained, and handcuffs were put on them.  I don't know if [the search] was immediately or if it was shortly thereafter. . . . Once we made contact with [defendant] and he was taken to the patrol car to be secured, handcuffs were put on." Id. at p. 79.  "[T]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." Winston v. Lee, 470 U.S. 753, 760 (1985) (internal

quotation marks omitted).  Law enforcement's decision to search defendant's person implicates his vital interests in "personal privacy and dignity" and was not the least intrusive means available.  Id.  Subjecting defendant to a search of his person, where Deputy George examined the insides of his pockets, eventually removing his wallet to search its contents, was more "intrusive than necessary for an investigative stop."  See Hill, 91 F.3d at 1070.  Deputy George's assertion of his presence and commencement of a search of defendant's person was beyond that "necessary to achieve the purpose of the [ ] stop[,]" and constituted a de facto arrest.  Sanford, 813 F.3d at 713.

The question becomes whether the arrest was supported by probable cause.  The court finds it was.

"Probable cause exists at the time of arrest if the totality of the circumstances known to the officers involved is sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense." United States v. Chartier, 772 F.3d 539, 545 (8th Cir. 2014) (internal quotation marks omitted).  The magistrate judge found "[t]here was sufficient evidence providing a probability or substantial chance that defendant had been selling methamphetamine, based on Agent Palmer's interview with Harold and independent corroboration by law enforcement."  (Docket 163 at p. 12). Defendant objects to that conclusion.  (Docket 174 at pp. 6-7).  The court finds the information Mr. Harold provided—and law enforcement independently confirming the accuracy of the information—sufficiently provided Deputy George with probable cause since he was justified in believing defendant "had

committed or was committing an offense." See Chartier, 772 F.3d at 545;
supra Section II.a.

Having determined law enforcement's actions during the stop of
defendant's car eventually constituted a lawful arrest, the court turns to the
constitutionality of Deputy George's warrantless search of defendant's person.
"[A] warrantless search of the person is reasonable only if it falls within a
recognized exception." Missouri v. McNeely, 569 U.S. 141, 148 (2013). One
"exception to the warrant requirement is a 'search incident to a lawful arrest.'"
Schaffer v. Beringer, 842 F.3d 585, 593 (8th Cir. 2016) (quoting Arizona v.
Gant, 556 U.S. 332, 338 (2009)). Since defendant was arrested based on
probable cause, the search his person did not violate the Fourth Amendment
because it was incident to his arrest.[10] See id.

Deputy George's examination of defendant's wallet also did not violate
defendant's rights. "As a general matter, in a search incident to arrest, police
officers are allowed to search not only an arrestee's person for weapons, but
also for evidence, and the scope of the search extends to containers found on
the person." Basham v. United States, 811 F.3d 1026, 1028 (8th Cir. 2016);
see also United States v. Lester, 647 F.2d 869, 874 (8th Cir. 1981) ("In
Robinson the court held admissible heroin concealed inside a cigarette package

---

[10]Even if law enforcement's stop evolved into a de facto arrest after
searching his person, the fact that there was probable cause for the arrest
independent of the search's results means the outcome of the constitutional
analysis is unchanged. United States v. Leo, 792 F.3d 742, 748 n.1 (7th Cir.
2015) ("We note that even a search that occurs before an arrest may be deemed
lawful as incident to that arrest, so long as probable cause for an arrest existed
independently of the evidence discovered during the search.") (citing Chartier,
772 F.3d at 546).

found in defendant's pocket, even though the package had been opened and examined without a warrant.") (citing <u>United States v. Robinson</u>, 414 U.S. 218, 235 (1973)).

The court finds law enforcement did not violate the Fourth Amendment when they arrested and searched defendant. The court overrules defendant's objections and adopts the magistrate judge's report and recommendation as explained above.[11]

### c. Search warrant

On the evening defendant was arrested and searched, a South Dakota state court judge issued a warrant for law enforcement to search defendant, his girlfriend Ms. Urioste, Ramkota Hotel room number 2713 and defendant's grey Jeep. (Docket 79-2). The magistrate judge determined the warrant was consistent with the Fourth Amendment because it was supported by probable cause. (Docket 163 at pp. 19-20). Defendant objects to that conclusion. (Docket 174 at pp. 4-5, 7-8).

"Whether a warrant is supported by probable cause is a legal determination and is based on whether the warrant is supported by facts that would 'justify a prudent person in the belief that there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" <u>United States v. Thurmond</u>, 782 F.3d 1042, 1044 (8th Cir. 2015) (quoting <u>United States v. Riedesel</u>, 987 F.2d 1383, 1390 (8th Cir. 1993)).

_____

[11]Because the court found no constitutional violation even in the absence of defendant's consent, the court does not delve into the consent issue.

In the analysis above, the court found law enforcement had probable cause to arrest defendant. See supra section II.b. The probable cause consisted of the information Mr. Harold provided to Agent Palmer, which was accurate and law enforcement independently corroborated. Id. Law enforcement personnel completed an affidavit detailing this information, which was the basis for the search warrant the state court issued. (Dockets 79-1 & 79-2). The accurate and corroborated information in the affidavit related to defendant's hotel room, vehicle and girlfriend, so the probable cause the court found with respect to his arrest also applies to those places and Ms. Urioste. (Dockets 79-1 & 79-2). Based on the court's earlier probable cause determination, the court finds the warrant in this case was "supported by facts that would justify a prudent person in the belief that there is a fair probability that contraband or evidence of a crime will be found in a particular place."[12] Thurmond, 782 F.3d at 1042 (internal quotation marks omitted).

The court finds the state court warrant did not violate the Fourth Amendment. The court overrules defendant's objections and adopts the magistrate judge's report and recommendation on this issue.

---

[12]In seeking to undermine the affidavit supporting the warrant, defendant makes claims about the reliability and accuracy of information Agent Palmer, Special Agent Byron and Mr. Harold provided. (Docket 174 at pp. 2, 4-5, 6-8). The court finds these arguments unpersuasive. They do not undercut the court's probable cause determination which analyzed the information law enforcement collected and the extent it was independently verified. See supra section II.a. & b.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's motion to dismiss the indictment based on the Speedy Trial Act and the Sixth Amendment (Docket 218) is denied.

IT IS FURTHER ORDERED that defendant's objections to the magistrate judge's report and recommendation (Docket 174) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation (Docket 163) is adopted in full.

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket 96) is denied.

Dated October 16, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE