UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID JOHN SCHWARTING,<br><br>Defendant. | 5:14-CR-50100-JLV<br><br>REPORT AND RECOMMENDATION |

Pending is Defendant's Motion to Dismiss Indictment (Doc. 123), and Defendant's Second Motion to Dismiss Indictment (Doc. 224). Defendant, through his current counsel of record, George Grassby, filed a memorandum in support of the second motion on August 4, 2017, and voluminous exhibits attached thereto. (Doc. 225). The United States resists the motions by written memorandums. (Docs. 173 and 237). Based on careful consideration of the record and counsel's written arguments, the Court respectfully makes the following:

## **RECOMMENDATION**

It is respectfully recommended that Defendant's Motions to Dismiss Indictment be denied in their entirety.

## **JURISDICTION**

Defendant is charged in an Indictment with Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and

841(b)(1)(B).  The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Chief Judge Jeffrey L. Viken's Standing Order dated March 9, 2015, and the Order of Referrals dated November 15, 2016, and August 9, 2017 (Docs. 126 and 230).

**FACTUAL BACKGROUND**

Defendant David Schwarting moves to dismiss the Indictment on the grounds that the government engaged in prosecutorial misconduct which violated Mr. Schwarting's due process rights under the Fifth Amendment and his right to counsel under the Sixth Amendment.

An evidentiary hearing on Mr. Schwarting's Second Motion to Suppress was held on December 14, 2016.  (Doc. 143, 160).  The facts of this case are set forth in extensive detail in this magistrate judge's report and recommendation on the Second Motion to Suppress.  (Doc. 163).  Defendant David Schwarting objected to the factual and legal conclusions.  (Doc. 174).  The district court considered Mr. Schwarting's objections and overruled them, ordering that the report and recommendation was adopted in full.  (Doc. 239).  Accordingly, the factual finding of the report and recommendation and the district court's order of October 16, 2017, are the law of the case.  However, an additional discussion of other facts relevant to the Motions to Dismiss Indictment, as set forth in the record, is merited.

**1.     Attorney Robert Rohl**

At Mr. Schwarting's initial appearance on October 29, 2014, attorney Robert Rohl was appointed to represent Mr. Schwarting.  (Doc. 21).  Nearly

2

eight months later, on June 23, 2015, Mr. Schwarting filed an *ex parte* motion[1] requesting that Mr. Rohl be dismissed. (Doc. 48). During the *ex parte* hearing,[2] Mr. Schwarting claimed that Mr. Rohl lied to him, yet Mr. Schwarting could not provide any examples. (Doc. 196). Mr. Schwarting stated that the lie "created a conflict of interest." (Doc. 196, p. 2). Mr. Schwarting was disgruntled that Mr. Rohl had not provided discovery materials which were obtained by outside counsel retained by Mr. Schwarting in his state court case. Mr. Schwarting felt that he was being pressured by Mr. Rohl to take a plea deal; that he could not trust Mr. Rohl; and that Mr. Rohl was ineffective. Upon questioning Mr. Rohl, he indicated that "I would certainly not have an issue stating that we have an irreparable breakdown of communications." (Doc. 196, p. 5). The court granted the motion and appointed replacement counsel.

## 2. Attorney Paul Winter

On June 29, 2015, the court appointed Paul Winter to represent Mr. Schwarting. Nearly thirteen months later, on July 18, 2016, Mr. Schwarting filed an *ex parte* motion to dismiss[3] counsel. (Doc. 86). The motion asserted that a breakdown in the attorney client relationship occurred and that Mr. Winter's assistance was totally ineffective. (Doc. 86). During the *ex parte*

---

[1]    Mr. Schwarting captioned his pleading as an Ex-Parte Motion for Dismissal of Attorney. The court confirmed that Mr. Schwarting's desire was to obtain replacement counsel, not to proceed *pro se*. (Doc. 196, p. 6).

[2]    Mr. Schwarting has waived the attorney-client privilege by voluntarily placing it at issue and filing lengthy memorandums detailing their communications. United States v. Workman, 138 F.3d 1261, 1263 (8th Cir. 1998) ("Voluntary disclosure of attorney client communications expressly waives the privilege.").

[3]    Mr. Schwarting again clarified that he was requesting replacement counsel.

hearing on the motion, Mr. Schwarting described his theory that the government colluded with his prior state court defense counsel in his state court case.  (Doc. 197).  Mr. Schwarting believed that the government acted improperly by informing Mr. Winter that he had a conflict of interest given Mr. Winter's previous telephone conversation with Trevor Scott Ray regarding potential representation.  Mr. Schwarting asserted that in doing so, the government had colluded and collaborated with his attorneys which would merit dismissal of his case.  Mr. Schwarting revealed that he planned to call Mr. Winter as a witness in support of his motion to dismiss.  Out of an abundance of caution that Mr. Winter would be called as a witness, the court granted the motion and appointed replacement counsel.  (Doc. 197, p. 9).

### 3.    Attorney Jamy Patterson

The court appointed Jamy Patterson to represent Mr. Schwarting on July 22, 2016.  (Doc. 89).  Ms. Patterson filed several motions, including motions to suppress and motions to compel discovery.  (Doc. 94, 96).  On September 19, 2016, before an evidentiary hearing was held on the motion to suppress and the motion to compel, Ms. Patterson filed a letter written by Mr. Schwarting and provided copies to the government at the request of Mr. Schwarting. Mr. Schwarting's letter described his desire to have Ms. Patterson represent him and expressed appreciation for her professionalism.  In the letter Mr. Schwarting concedes "that there is not one shred of evidence in the Discovery [sic] that mentions Trevor Ray or anyone associated with him" and that the government has denied that the Trevor Ray/Robert Charles Massat

conspiracy is related to the Schwarting case.  (Doc. 111-1, pp. 4-5).
Mr. Schwarting expressed concern regarding his perception that the
government could interfere with Mr. Schwarting's right to counsel, by alleging
that Ms. Patterson had a conflict of interest.  In an effort to prevent this
possible outcome, Mr. Schwarting suggested a hearing be held to require the
government to state its position on the record.  Mr. Schwarting ended the letter
by thanking Ms. Patterson for "your excellent representation and your firm
commitment to Justice [sic]."  (Doc. 111-1, p. 5).  Two days later, the court held
an *ex parte* hearing to attempt to decipher the convoluted relief Mr. Schwarting
was seeking.  (Doc. 112).  The court then entered the following written order:

> Counsel for Defendant David John Schwarting filed a letter raising
> concerns regarding whether the government would assert that a
> conflict of interest exists for Mr. Schwarting's attorney, Ms. Jamy
> Patterson.  An *ex parte* hearing was held and the court was unable
> to determine whether a conflict of interests exists.  Mr. Schwarting
> and Ms. Patterson asserted that there is no conflict of interest
> arising from Ms. Patterson's representation of Robert Charles
> Massat.  Accordingly, the court orders that a hearing be held on
> October 12, 2016, at 3:30 p.m., for the purpose of determining
> whether the above captioned case has any connection with the case
> of *USA v. Robert Charles Massat,* 5:15-cr-50089.

(Doc. 115).  On October 12, 2016, an evidentiary hearing was held to determine
whether Mr. Schwarting's case had any connection to the Trevor
Ray/Christopher Gabbard/Robert Massat conspiracy.  (Doc. 194).  South
Dakota Division of Criminal Investigation Special Agent Preston Patterson
testified at the hearing.  SA Preston Patterson was the case agent on the
Ray/Gabbard/Massat conspiracy.  SA Preston Patterson testified that there
was no correlation between the two conspiracy cases.  (Doc. 194, pp. 7–8).  The

court accepted this testimony and made a finding of fact that there was no conflict of interest.  (Doc. 194).

Immediately following the hearing, the court held an *ex parte* hearing to follow up on Mr. Schwarting's *ex parte* correspondence regarding his attorney, Ms. Patterson.  The court inquired of both Ms. Patterson and Mr. Schwarting who mutually desired that their attorney-client relationship continue.  In light of resolving the conflict-of-interest concern raised by Mr. Schwarting, the court scheduled an evidentiary hearing on the motion to suppress.

Prior to the evidentiary hearing on the motion to suppress, Mr. Schwarting filed this pending Motion to Dismiss Indictment on the grounds of alleged government misconduct.  (Doc. 123).  The motion and memorandum argue that the government's contact[4] with Mr. Winter regarding his representation of Mr. Schwarting and a conversation with prospective client, Trevor Ray, constituted outrageous government conduct violating Mr. Schwarting's Fifth Amendment Due Process Rights and his Sixth Amendment right to counsel.  (Doc. 123, 124).  No evidentiary hearing is needed to resolve this motion (Doc. 293) and the court makes its report and recommendation.

The evidentiary hearing on the motion to suppress took place on December 14, 2016, during which time Mr. Schwarting was represented by Ms. Patterson.  The transcript of the evidentiary hearing was filed on January

---

[4]    The court assumes without deciding that the government attorney informed Mr. Winter that he had a conflict of interest.

11, 2017 (Doc. 160), and the court filed its Report and Recommendations on January 17, 2017. (Doc. 163). Mr. Schwarting filed objections to the Report and Recommendation on February 7, 2017. (Doc. 174). Less than a week later, Ms. Patterson filed an *ex parte* motion to withdraw as counsel. (Doc. 176). An *ex parte* hearing was held on the motion on February 17, 2017. Mr. Schwarting sought to have Ms. Patterson file motions to obtain discovery pertaining to the Ray/Gabbart/Massat drug conspiracy. (Doc. 200, p. 2). Given her prior representation of Robert Massat, Ms. Patterson believed that such a request would create a conflict of interest. Mr. Schwarting articulated a theory that the cases were indeed connected, because Mr. Schwarting's brother was employed by a cooperating witness in the Ray/Gabbart/Massat case. Mr. Schwarting further asserted that the cooperating witness was related to an attorney in the law firm which previously represented Mr. Schwarting in his state court case. The court expressed doubt regarding the merits of the potential discovery request, given its previous finding that no connection exists between the Schwarting case and the Ray/Gabbart/Massat conspiracy. However, given Ms. Patterson's position that she could not file the motions demanded by Mr. Schwarting given her representation of Robert Massat, the court granted the motion and appointed replacement counsel. (Doc. 179).

### 4.    Attorney George Grassby

The court appointed attorney George Grassby to represent Mr. Schwarting on March 9, 2017. (Doc. 179). Mr. Grassby filed numerous motions on Mr. Schwarting's behalf including the following: Motion for a

Frank's Hearing (Doc. 216), Second Motion to Dismiss Indictment (Doc. 224), Motion for a Hearing in Support of Second Motion to Dismiss (Doc. 229), Motion for Reconsideration of Release (Doc. 244), Third Motion to Suppress and Request of an Evidentiary Hearing (Doc. 248), Third Motion to Compel Discovery (Doc. 250), Amended Third Motion to Compel (Doc. 258), Second Motion for Reconsideration of Release (Doc. 269), Motion for Detention Hearing (Doc. 279), and a Motion for Subpoenas. (Doc. 287). Those motions are all pending with the court.

A brief discussion about the attorney-client relationship between Mr. Schwarting and Mr. Grassby is filed herewith as an *ex parte* addendum. Since Mr. Schwarting has not alleged any government misconduct as it relates to Mr. Grassby, he has not waived the attorney-client privilege with regards to Mr. Grassby and it is appropriate for the summary to be used for court informational purposes only.

## DISCUSSION

In his Motions to Dismiss Indictment (Docs. 123 & 224), Mr. Schwarting alleges violations of his Fifth and Sixth Amendment rights. The court discusses his arguments in the following subsections and then addresses the merits of his motions.

## I.    Legal Standard: Sixth Amendment Right to Counsel

The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The "Sixth Amendment right

to counsel contains a correlative right to representation what is unimpaired by conflicts of interest or divided loyalties." Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991).  "The nature of the factual inquiry into potential conflicts is case-specific and that in some instances, the court would have the relevant facts without engaging in an intensive inquiry." United States v. Rodriguez, 612 F.3d 1049, 1054 (8th Cir. 2010) (citing Ausler v. United States, 545 F.3d 1101, 1104 (8th Cir. 2008) (finding no "elaborate inquiry" needed into potential conflict arising from threats of frivolous legal claims made by the defendant against the attorney)).  Further, it is well established that a defendant does not have the absolute right to the counsel of his choice.  United States v. Blum, 65 F.3d 1436, 1442 (8th Cir. 1995).  The burden of proving a Sixth Amendment violation rests with the defendant.  See Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986) (from which one infers that it is the defendant's burden); Moore v. United States, 178 F.3d 994, 999 (8th Cir. 1999) (reciting that it is the defendant's burden to prove a Sixth Amendment violation).

## II.    Legal Standard: Fifth Amendment Due Process Claim

"A motion for judgment of dismissal on the grounds of government misconduct . . . usually is grounded on the allegation that the defendant cannot receive a fair trial now or at any time in the reasonably foreseeable future and, thus, cannot be afforded due process of law." United States v. Banks, 383 F.Supp. 389, 391 (D.S.D. 1974) (citing United States v. Banks, 374 F.Supp. 321, 323 (D.S.D. 1974); United States v. Heath, 260 F.2d 623 (9th Cir. 1958)).  The Eighth Circuit recognizes the defense of outrageous government

conduct, but "only in cases involving 'the most intolerable government conduct.'" United States v. Hunt, 171 F.3d 1192, 1195 (8th Cir. 1999). In Hunt, the court explained:

> Government conduct which is so outrageous and shocking that it exceeds the bounds of fundamental fairness, may violate the Due Process clause and bar a subsequent prosecution. The level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court.

Id. at 1195 (internal citations and quotations omitted). "The Supreme Court has recognized that 'some day' a case might arise where the government's conduct is 'so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.' The Supreme Court has yet to see that day." United States v. Berg, 178 F.3d 976 (8th Cir. 1999) (citing United States v. Russell, 411 U.S. 423, 431–32 (1973)). Likewise, the Eighth Circuit noted that it had yet to decide a case where dismissal of an indictment was appropriate based on outrageous government conduct. Id. at 979. The defendant bears the burden to prove the existence of outrageous government conduct. United States v. Larsen, 427 F.3d 1091, 1094–95 (8th Cir. 2005).

## III. Whether Mr. Schwarting's Fifth Amendment Due Process Right and Sixth Amendment Right to Counsel have been Violated

In his Motions to Dismiss, Mr. Schwarting presents several theories. Mr. Schwarting argues that he has been denied his Sixth Amendment right to counsel because the government's alleged action in informing Mr. Winter that he had a conflict of interest has 1) caused Mr. Schwarting to lose Mr. Winter as

10

an attorney; 2) caused delays in his case; 3) has prevented his attorneys from zealously representing him; and 4) caused him to lose the opportunity to negotiate a favorable plea agreement in his state court case.   He further argues that the government's conduct was so outrageous that it violated his Fifth Amendment due process rights.

### A.    Improper Government Interference with Attorney Paul Winter

Mr. Schwarting alleges that an Assistant United States Attorney assigned to this case informed Mr. Schwarting's former attorney, Paul Winter, that he likely had a conflict of interest in representing Mr. Schwarting, given the fact that Mr. Winter had a telephone conversation with a criminal defendant in an unrelated drug conspiracy.  The government expresses doubt as to whether this conversation ever took place.

Resolution of this factual dispute is unnecessary.  The question presented to this court is as follows: if the government did indeed inform the defendant's attorney that he likely had a conflict of interest when none existed, does that constitute governmental conduct so outrageous that due process principals would absolutely bar the government from invoking judicial processes to obtain a conviction?  The government argues that, even accepting Mr. Schwarting's factual assertions as true, the government's conduct does not shock the conscience of the court or otherwise infringe on Mr. Schwarting's due process rights.  For the following reasons, the court finds that any government conduct towards Mr. Winter did not violate the Fifth and Sixth Amendments.

### 1. *Brief summary of relevant facts*

On October 29, 2014, Mr. Schwarting attended his initial appearance, arraignment and detention hearing on the Indictment filed in this case. Mr. Schwarting completed a financial affidavit (Doc. 19), requested court appointed counsel, and the court appointed attorney Robert Rohl to represent Mr. Schwarting. (Doc. 21). Approximately eight months later, on June 23, 2015, Mr. Schwarting moved the court for substitute counsel and the court granted the motion appointing attorney Paul Winter to represent Mr. Schwarting. Mr. Schwarting alleges that shortly after Mr. Winter was appointed, the government contacted him and said that he "likely had a conflict of interest." [5]

If indeed Mr. Winter was informed of the prosecutor's belief that he had a conflict, it had little effect on his representation. Mr. Winter declined to withdraw because he did not know of any connection between the Trevor Scott Ray conspiracy and the Schwarting case. Mr. Winter remained as counsel of record for an additional thirteen months and never moved to withdraw. Instead, Mr. Schwarting moved the court for substitute counsel and the court entered an order appointing attorney Jamy Patterson, given Mr. Winter's representation that he may be called as a witness to whether the government

---

[5]    Attached in support of Mr. Schwarting's motion is a letter from his former counsel Paul Winter which identifies the governmental conduct in question as follows: "I was appointed to represent Mr. Schwarting ("David") in 2015, and shortly afterwards, I received a telephone call from the prosecutor, Ted McBride. Mr. McBride said he knew I had spoke to Trevor (Ray) and that I likely had a conflict of interest as a result." (Doc. 123-1 at p. 1).

informed him that he "likely" had a conflict due to his involvement with Trevor Scott Ray. (Doc. 123). Ms. Patterson was appointed on July 22, 2016.[6]

### 2. *Whether a conflict existed*

Throughout his case and his written submissions, Mr. Schwarting has asserted a number of contradictory positions and arguments.[7] At times, he has argued that his case and the Ray/Gabbart/Massat cases *are* connected by common facts, thereby creating a conflict of interest for attorneys involved with both cases. At other times, he has argued that there is *no* conflict of interest between the two cases, and therefore, it was outrageous for the government to alert his attorney of a potential conflict. The court held a hearing on November 17, 2017, to clarify which position Mr. Schwarting relies upon in support of his motion to dismiss. Mr. Schwarting failed to set forth a clear position at the hearing.

Based on the credible testimony of Agent Patterson, the facts as set forth during the trial of Trevor Scott Ray of which the court takes judicial notice, the considerable delay and reluctance of Mr. Schwarting's attorneys in withdrawing, and Mr. Schwarting's own statements on the record, the court

---

[6]     Mr. Schwarting now claims that he believed, as early as September 5, 2016, that Ms. Patterson had a conflict of interest, as she represented Trevor Ray's codefendant Robert Massat. (Doc. 225). Mr. Schwarting's position is simply not supported by the facts or the record in this case. Further, as stated above, the court fully inquired and found there was no connection between the Massat case and Mr. Schwarting's case.

[7]     Mr. Schwarting's first position is that Paul Winter's counsel was rendered ineffective by the government alleging a conflict that never existed. (Doc. 123-2, p. 2). Mr. Schwarting's second position is that the government colluded with the Rensch Law Firm because, in fact, Mr. Schwarting's case and the Ray/Gabbart/Massat conspiracy are related. (Doc. 225, p. 7). Mr. Schwarting's third position is that the government "was desperately seeking information that would create a nexus between Ray and myself." (Doc. 225-3, p. 12)

affirms its previous factual finding that there is no known correlation between the Harold/Schwarting conspiracy and the Ray/Gabbart/Massat conspiracy. Therefore, no conflict existed regarding Paul Winter and Jamy Patterson.

### 3. *Whether there was outrageous government conduct*

#### a. <u>Alleged government action in informing counsel of likely conflict.</u>

For the purpose of the Motions to Dismiss, the court will assume without deciding that the government attorney informed Mr. Schwarting's second attorney, Mr. Winter, that he had a conflict of interest, when in fact no such connection existed.  The court must determine whether such allegations constitute outrageous government conduct sufficient to violate Mr. Schwarting's Fifth and Sixth Amendment rights, meriting dismissal of the case.

Despite over 125 pages of motions and memorandum filed by Mr. Schwarting on this topic, he cites few legal authorities which support his position.  Mr. Schwarting primarily relies upon <u>United States v. Marshank</u>, 777 F. Supp. 1507 (N.D. Cal. 1991), and <u>United States v. Schell</u>, 775 F.2d 559 (4th Cir. 1985), both of which involved egregious government interference with defendants' due process rights.

In <u>Marshank</u>, the court dismissed the indictment based on blatant violations of defendant's Fifth and Sixth Amendment rights.  There, the government mounted a narcotics investigation against defendant Marshank; attorney Ronald Minkin represented Marshank and various co-conspirators. The government "collaborated with Marshank's attorney, to build a case

14

against him, to effect his arrest, and to ensure that he would cooperate with the government rather than contest the charges against him." 777 F. Supp. at 1519. At the government's behest, attorney Minkin provided AUSAs with voluminous information on Marshank and co-conspirators during the pre-indictment investigation, going so far as to testify at the grand jury proceeding against Marshank. Id. at 1515–19. The government used attorney Minkin—and Minkin's other clients—against Marshank, creating a serious conflict of interest. Significantly, the government then hid the conflict from Marshank himself. Id. at 1519–20. In dismissing the indictment, the court found the government's interference with the attorney-client relationship severely prejudiced Marshank: without Minkin's aid, "there would not have been any indictments against Marshank." Id. at 1521.

In Schell, the Fourth Circuit upheld the district court's dismissal of an indictment under circumstances somewhat similar to Marshank. There, defense attorney David Jividen briefly represented two clients, Cain and Wilson, in a drug investigation. 775 F.2d at 562–63. Several months later, Jividen was hired as an AUSA. Id. Although Jividen was excluded from prosecuting Cain and Wilson, he appeared in front of a grand jury proceeding investigating the same drug organization. Id. Wilson and Cain moved to dismiss their indictments, claiming Jividen's participation in the grand jury violated their due process rights. Id. at 563. The government argued that Jividen did not prosecute Wilson and Cain, and possessed no confidential information about his former clients. Id. at 565. Nevertheless, the court

dismissed the indictment, finding that "Jividen represented Wilson and Cain with respect to the very same criminal activity which led to the indictment that he ultimately helped to prosecute and under which Wilson and Cain were convicted." Id.

The facts in Marshank and Schell bear no resemblance to this case. In fact, the court is unable to find any cases in which a court finds a prosecutor's erroneous advisement to defense counsel that he has conflict of interest is improper, let alone that such action would result in dismissal as a sanction. Here is it alleged that the government informed Mr. Winter that he likely had a conflict of interest, when no such conflict existed. Compare Marshank, 777 F. Supp. at 1519 (finding that government actively concealed conflict of interest). The court finds that the government's conduct here does not constitute an improper intrusion into the attorney-client relationship. Unlike Marshank and Schell, here there is no evidence that the government persisted in any further efforts to interfere with Mr. Winter's representation of Mr. Schwarting, or with Mr. Schwarting and his subsequent attorneys. There is no allegation of any further advisement or admonition from the government regarding potential conflicts. The record is devoid of any other efforts by the government to have Mr. Winter removed as counsel during the following 13 months that Mr. Winter represented Mr. Schwarting. In fact, it was Mr. Schwarting's own persistence in his unsupported theory that ultimately led to Mr. Winter's withdrawal from the case.

16

A review of Eighth Circuit case law establishes courts' reluctance to dismiss an indictment, even in the presence of far more egregious government misconduct than what is complained of by Mr. Schwarting.  For example, in United States v. Williams, Cr. No. 8:09-457, 2011 WL 1058920 (D. Neb. Mar. 21, 2011), the court denied defendant Williams' motion to dismiss the indictment based on due process violations.  There, an attorney representing Williams' co-conspirator befriended Williams and then passed information on him to law enforcement.  After gaining approval from the Justice Department, the attorney conducted 63 secretly-recorded meetings with Williams, in which Williams made numerous incriminating statements.  Id. at *5.  Despite the attorney's work with the government, the court declined to dismiss the indictment, finding that even if an attorney-client relationship existed, the defendant was not prejudiced.  Id. at *16.  The facts in front of the court here are far less startling than those in Williams; further, the court finds no indication that Mr. Schwarting was prejudiced as a result of the government's conduct.  See also United States v. Hunt, 171 F.3d 1192 (8th Cir. 1999) (finding no outrageous government conduct where cooperating witness assisted federal authorities by delivering 2,088 grams of ephedrine, an ingredient in methamphetamine, to defendants).

17

### b. <u>Alleged government collusion with state court counsel</u>

Mr. Schwarting's basis for the Motions to Dismiss has been a moving target. In addition to the alleged Paul Winter conflict, Mr. Schwarting's argument now encompasses a theory that law enforcement acted in concert with Mr. Schwarting's state court defense attorney.  Despite the court's factual finding on October 12, 2016, that no connection exists between Mr. Schwarting's case and the Ray/Gabbart/Massat conspiracy, Mr. Schwarting continues to argue that the cases are connected and part of an intricate and vast conspiracy that the government and Mr. Schwarting's prior state court attorney were implicit in.  Mr. Schwarting describes this theory in detail in his "Declaration" found at Docket 225-1, pp. 2-10.  A timeline and summary of the facts as set forth by Mr. Schwarting are as follows:

- *September 13, 2014.*  Mr. Schwarting is arrested and shortly thereafter is charged in state court.

- *September 17, 2014.*  Attorney Paula Peterson is appointed by the state court to represent Mr. Schwarting.

- *Early October 2014.*  At the urging of his brother, Mr. Schwarting contacts Rensch Law Firm to represent him.

- *October 9, 2014.*  Rensch Law Firm assigns the case to associate attorney Paul Pietz.

- *October 10, 2014.*  Attorney Pietz meets with Mr. Schwarting at the jail.

- *October 13, 2016.*  Attorney Paula Peterson meets with Mr. Schwarting at the jail and informs Mr. Schwarting that his case "is going federal"

- *October 14, 2014.*  Attorney John Rusch of the Rensch Law Firm appears with Mr. Schwarting at his state court arraignment.

- *October 21, 2014.* A federal grand jury returns an indictment against Mr. Schwarting.

- *October 23 & 24, 2014.* Attorney Pietz has a telephone conference and in person meeting at the jail with Mr. Schwarting. Attorney Pietz does not tell Mr. Schwarting about the federal indictment. [8]

- *October 27, 2014.* Attorney Pietz meets with Mr. Schwarting at the jail and informs him of the federal indictment and that CJA attorney Robert Rohl has been appointed as his federal attorney.  Mr. Schwarting asserts that attorney Pietz ineffectively represented him by failing to negotiate a plea deal on the state level, despite having "ample opportunity." (Doc. 225-1, p. 9).  Mr. Schwarting claims that Attorney Pietz's poor representation led to a federal indictment. (Doc. 225-1, p. 9).[9]

- *October 28, 2014.* Hearing in state court with Mr. Schwarting and Attorney Pietz.  End of attorney/client relationship.

First, it was Mr. Schwarting who elected to engage the services of the Rensch Law Firm.  There is no indication or allegation that the government had any involvement with this decision.  Second, even if the Rensch Law Firm represented a witness in the Ray/Gabbart/Massat conspiracy, the court's previous determination that the cases are unrelated renders this discussion a moot point.  Third, even if the cases were related, Mr. Schwarting suffered no prejudice.  At the most, the Rensch Law Firm represented Mr. Schwarting for

---

[8]    There is no evidence or basis to believe that Pietz either knew or should have known of the federal indictment.  Simply because Paula Peterson told Mr. Schwarting that the case "was going federal," does not establish that Pietz knew or should have known.  Furthermore, this discredits Mr. Schwarting's theory that the Rensch Law Firm colluded with the government to have Mr. Schwarting federally indicted.  According to Mr. Schwarting's own timeline, the decision to pursue federal charges was made no later than two days after Mr. Schwarting's first meeting with attorney Paul Pietz.  It is illogical that the government built a federal case based upon and during the few days that the Rensch Law Firm represented Mr. Schwarting.

[9]    These two statements reveal the unrealistic expectations upon which Mr. Schwarting relies.  Mr. Schwarting was federally indicted just 7 business days after Attorney Pietz first met Mr. Schwarting, and just 5 business days after his arraignment in state court.  Further, Mr. Schwarting fails to recognize that the government is under no obligation to engage in plea negotiations.

thirty days.  The court finds no merit to Mr. Schwarting's assertion that he suffered prejudice by the missed opportunity to negotiate a plea agreement and prevent a federal indictment.  Case law establishes that a defendant has no such right, therefore he can suffer no prejudice from the loss of something to which he had no right.  <u>Fourth Street Pharmacy v. U.S. Dept of Justice, Drug Enforcement Admin.</u>, 826 F.2d 1137 (8th Cir. 1998) ("[N]either plea agreements negotiated by state prosecutors to which the federal government is not a party, nor subjective expectations of the parties regarding future federal action prevent federal agencies from independently enforcing compliance with federal law.").  Mr. Schwarting's legal representation in his state court case has no bearing on his case now pending in federal court.

This court has a duty to inquire thoroughly into an alleged conflict of interest to protect a defendant's constitutional rights.  <u>See</u> <u>United States v. Rodriguez</u>, 612 F.3d 1049 (8th Cir. 2010); <u>United States v. Welty</u>, 674 F.2d 185 (3rd Cir. 1982).  The court has fulfilled this duty.  Mr. Schwarting has been represented by four separate attorneys, none of which had actual conflicts of interest in representing Mr. Schwarting.  Their removal is entirely attributed to either a breakdown of communication and/or because Mr. Schwarting persistently pursues his unsupported theory that his case and the Ray/Gabbart/Massat cases are interrelated.  It is Mr. Schwarting's own actions, and not the government, which has caused the lengthy delays in this case.  Therefore, the court concludes that Mr. Schwarting has failed to carry his burden in establishing that the government has engaged in outrageous

conduct, nor is there any reason to believe that the defendant cannot receive a fair trial now or at any time in the reasonably foreseeable future and, thus, cannot be afforded due process of law.  Likewise, Mr. Schwarting has been afforded his Sixth Amendment right to counsel with its correlative right to representation that is unimpaired by conflicts of interest or divided loyalties, and therefore, he has failed to demonstrate a Sixth Amendment violation.

## CONCLUSION

Based on the foregoing discussion and analysis, this court recommends that the Motions to Dismiss Indictment (Docs. 123 & 224) be denied in their entirety.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 24th day of July, 2018.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge