UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>vs.<br><br>DAVID JOHN SCHWARTING,<br><br>                  Defendant. | 5:14-CR-50100-JLV<br><br>ORDER DENYING MOTION FOR EVIDENTIARY HEARING<br>AND<br>REPORT AND RECOMMENDATION REGARDING THIRD MOTION TO SUPPRESS (DOC. 248) |

## **INTRODUCTION**

Defendant David Schwarting filed a Third Motion to Suppress Stop, Arrest, Search and Search Warrant and Request for Evidentiary Hearing Based on Newly Discovered Evidence.  (Doc. 248).  Mr. Schwarting filed the following related filings: Memorandum of Law in Support of Defendant's Third Motion to Suppress (Doc. 249); and Response Brief (Doc. 268).  The United States filed a Memorandum in Opposition to Defendant's Third Motion to Suppress (Doc. 260).  The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Chief Judge Jeffrey L. Viken's Standing Order dated March 9, 2015.

## **PROCEDURAL BACKGROUND**

This court held an evidentiary hearing on December 14, 2016, on Defendant David Schwarting's Second Motion to Suppress (Doc. 96).  Present were Mr. Schwarting and his previous attorney, Jamy Patterson.  The

1

government called Special Agent Bob Palmer and Special Agent B.J. George to testify.  In his case in chief, the Defendant called Michelle Lamphere, general manager of the Best Western Ramkota Hotel and Rapid City Police Officer Carmen Visan, as well as re-calling Special Agent Bob Palmer.  The Defendant also testified.  The following items were received into evidence: the affidavit in support of the search warrant and the search warrant; the evidence inventory of items seized as a result of the search; an audio/visual recording taken from the patrol car of Officer Visan; and a security report dated September 12, 2014.  The transcript of the hearing was filed on January 11, 2017.  (Doc. 160).

The facts of this case are more fully set forth in the Report and Recommendation on the Second Motion to Suppress (Doc. 163), and in the Order (Doc. 239) affirming the findings of fact and conclusions of law of the Report and Recommendation.

## DISCUSSION

Defendant argues that newly discovered evidence requires that the evidentiary hearing be reopened.  Defendant asserts that approximately five months[1] after the December 14, 2016, evidentiary hearing, audio recordings of interviews conducted by Special Agent Bob Palmer of John Harold and Billie Joe Pentilla were provided to the defendant.  He also asserts that audio/visual recordings from SDHP Trooper Zach Bader and RCPD Officer Carman Visan constitute newly discovered evidence which merit reopening the detention

---

[1]   Even accepting as true the Defendant's claim that these recordings were provided in approximately May of 2017, it is unclear why the defendant waited until January 1, 2018, to assert the claim that newly discovered evidence requires reopening the detention hearing.

2

hearing. Finally, Defendant argues that his interests were not zealously represented by his prior counsel, whom he alleges had a "known conflict of interest." (Doc. 249 at pp. 1–2).

Defendant argues that the audio recordings of John Harold and Billie Joe Pentilla and the video recordings from the patrol car contain material facts which, if presented, would likely have altered the outcome of the Magistrate's Report and Recommendation on the Motion to Suppress, the District Court's Order affirming the Report and Recommendation, as well as the Magistrate's Report and Recommendation on the Motion for a Frank's hearing. (Doc. 249 at pp. 6-7). Although not entirely clear from the repetitive, confusing and vague nature of Defendant's filings, it appears that Defendant claims 1) he was not able to adequately prepare for the hearing without these recordings; 2) statements within these recordings demonstrate "exceptional circumstances;"[2] and 3) the recordings would have changed the outcome of the motions.

## I.    Legal standard for reopening suppression hearing.

The court may, in its discretion, reopen a suppression hearing to hear newly discovered evidence. See United States v. Johnson, 944 F.2d 396, 403 n. 5 (8th Cir. 1991) (holding that the district court did not abuse its discretion when it reopened the suppression hearing "to allow consideration of evidence not presented at the initial hearing"). In making the decision to reopen an evidentiary hearing, a district court may consider the probative value of the proffered new evidence and may deny the motion when the evidence is of little

---

[2]    Defendant fails to identify what exceptional circumstances exist.

3

or no value in ruling on the motion to suppress. See United States v. Gill, 513 F.3d 836, 846 (8th Cir. 2008).

## II.   Evidence from audio recordings of John Harold and Billie Joe Pentilla as it pertains to the affidavit in support of the search warrant and credibility of SA Bob Palmer.

Defendant argues that content from the audio recordings of the John Harold and Billie Joe Pentilla interviews show material contradictions with SA Bob Palmer's affidavit in support of the search warrant and with his testimony provided during the evidentiary hearing. (Doc. 249).  Defendant relies on the following:

1) Defendant takes exception to SA Palmer's characterization of Harold's efforts to obtain methamphetamine and Harold's meeting "Dave Swartz" through "different people" as a "drug organization."  (Doc. 249 at p. 9).

2) Defendant points out that Harold discussed "Dave Swartz" and not "Dave Schwartein" (Doc. 249 at p. 9)

3) Defendant points out that Harold has multiple versions and contradictory statements which SA Palmer presented as truthful.

4) Defendant points out that Harold's statement with regard to illegal activity is uncorroborated, as there were no controlled buys, text messages or phone calls, or money transaction confirmed (Doc. 249 at p. 10, 12).

5) Defendant points out that Billie Joe Pentilla never corroborates that a drug transaction took place in the Minerva's parking lot as

4

>   represented by SA Palmer during the suppression hearing; Pentilla identified Harold's drug source as "Red," and that David Schwarting is never identified as "Red."  (Doc. 249 at p. 10-11, 16-17)
>
> 6) Defendant argues SA Palmer knew Harold and Pentilla's statement were untruthful or unreliable, given that a) they were convicted felons; b) they gave multiple inconsistent accounts; c) they "struck a deal" to cooperate; and d) SA Palmer confronted them about not being truthful (Doc. 249 at p. 13)

Defendant argues that the court either failed to consider the above information, or it improperly concluded that reasonable suspicions existed to stop the defendant, and that probable cause existed to arrest the defendant and conduct a search of his person and hotel room.  Defendant has previously raised these arguments in his initial Motion to Suppress and the court addressed these arguments in its Report and Recommendation (Doc. 163 at pp. 8–11).  Defendant again raised many of these same arguments in his Objections to the Report and Recommendation (Doc. 174 at pp. 4, 7–8).  Defendant's arguments were considered and rejected by the district court in its Order dated October 16, 2017.  (Doc. 239).  Specifically, the district court held:

> Defendant argues law enforcement lacked reasonable suspicion because they had not personally observed any suspicious or criminal activity before stopping his car. (Docket 174 at p. 5).  But defendant's characterization of the reasonable suspicion standard is higher than the law in the Eighth Circuit.  Personally observing suspicious activity is not required; indeed, "[p]olice officers may rely upon notice from another police department that a person or vehicle is wanted in connection with the investigation of a felony when making a [ ] stop, even if the notice omits the specific articulable facts supporting reasonable suspicion."  United States

5

> v. Smith, 648 F.3d 654, 659 (8th Cir. 2011) (internal quotations marks and alteration omitted).
>
> Defendant claims Mr. Harold was not a reliable source of information. (Docket 174 at p. 5). Law enforcement's corroboration of Mr. Harold's information indicates otherwise. Mr. Harold told Agent Palmer a man with defendant's name had repeatedly sold him methamphetamine and might be staying at the Ramkota Hotel. He stated he met defendant in Sioux Falls and defendant drove a maroon Cadillac. Special Agent Byron confirmed defendant was in DCI's system, had a maroon Cadillac registered in his name and residence in Sioux Falls listed under his name. Agent Palmer corroborated defendant had room 2713 at the Ramkota Hotel and registered with the hotel a grey Jeep with Colorado plates. Once the grey Jeep parked outside room 2713 drove away, Deputy George stopped it. Mr. Harold's information about defendant was accurate, and law enforcement corroborated the information and more before stopping defendant's vehicle. Law enforcement acted on much "more than a mere hunch[.]" See Roberts, 787 F.3d at 1209. They had "specific and articulable facts[,]" Terry v. Ohio, 392 U.S. 1, 21 (1968), supporting their reasonable suspicion that defendant's "vehicle or its occupants [were] involved in criminal activity." Williams, 796 F.3d at 957.

(Docket 239 at pp. 19–20). The district court made similar findings as applied to SA Palmer's affidavit and rejected the same arguments that Mr. Schwarting asserts in his Third Motion to Suppress. The district court held:

> In the analysis above, the court found law enforcement had probable cause to arrest defendant. See supra section II.b. The probable cause consisted of the information Mr. Harold provided to Agent Palmer, which was accurate and law enforcement independently corroborated. Id. Law enforcement personnel completed an affidavit detailing this information, which was the basis of the search warrant the state court issued. (Dockets 79-1 & 79-2). The accurate and corroborated information in the affidavit related to defendant's hotel room, vehicle and girlfriend, so the probable cause the court found with respect to his arrest also applies to those places and Ms. Urioste.

(Docket 239 at p. 27). The district court further held:

> In seeking to undermine the affidavit supporting the warrant, defendant makes claims about the reliability and accuracy of

6

> information Agent Palmer, Special Agent Byron and Mr. Harold provided (Docket 174 at pp. 2, 4-5, 6-8). The court finds these arguments unpersuasive. They do not undercut the court's probable cause determination which analyzed the information law enforcement collected and the extent it was independently verified. See *supra* section II. a & b.

(Docket 239 at p. 27, n. 12). Defendant may dislike or disagree with the findings of fact and conclusions of law of the district court; however, it is the law of the case.

Defendant has had ample opportunity to litigate this matter. In fact, he challenged SA Palmer's credibility during cross examination at the December 14, 2016, suppression hearing. There, SA Palmer acknowledged during cross examination that 1) he did not verify that Mr. Harold did not deposit money into a Wells Fargo bank in Sioux Falls; 2) that he did not verify that Mr. Harold stayed the night in a Super 8 the previous evening; 3) he knew that Mr. Harold was on parole; and 4) he knew that Mr. Harold had multiple felonies, one of which was a crime of dishonesty. (Docket 160 at pp. 41–45). Mr. Schwarting's 34-page brief which outlines the "newly discovered evidence," even if taken as true, has little to no probative value in ruling on the motion to suppress. The fact that Mr. Harold and Ms. Pentilla gave evasive answers, were not initially forthcoming or truthful to SA Palmer, or that they were cooperating with the government is not fatal to a finding of probable cause. These are but a few of the many factors to weigh, which the court has already weighed.[3]

Furthermore, the minor inconsistencies that Mr. Schwarting relies upon do not undermine the court's finding that SA Palmer is a credible witness. The

---

[3] Mr. Schwarting's cross examination of SA Palmer is located at pp. 51–62 of Docket 160.

weight of the other evidence contained within the record substantially outweighs the evidence proffered by Mr. Schwarting and accordingly the court's finding of reasonable suspicion to stop the car; probable cause to effectuate the arrest; and probable cause to support the affidavit will not be reopened on this basis.

### III. Evidence from audio/visual recording from Officer Visan's patrol car.

Defendant asserts that he did not have an opportunity to view the video until after the evidentiary hearing, and therefore, the video constitutes "newly discovered evidence." The court rejects Mr. Schwarting's position. At the beginning of the December 14, 2016, evidentiary hearing, Mr. Schwarting's attorney Jamy Patterson confirmed that she had viewed the video prior to the hearing. (Doc. 160, p. 4-5). In fact, it is apparent from her examination of witnesses, that she had carefully studied the video. (Doc. 160, p. 90-91). As more fully set forth in the court's Report and Recommendation on the Motions to Dismiss Indictment (Doc. 291), Ms. Patterson's representation of Mr. Schwarting was free from any actual conflicts of interest. She zealously represented Mr. Schwarting; in fact, many of the arguments raised by Mr. Schwarting in his third motion to suppress were raised by Ms. Patterson either in written submissions or during in-court examination. Mr. Schwarting's interests were represented and he was afforded a meaningful opportunity to litigate any issues arising from the audio/visual recording from Officer Visan's patrol car.

Furthermore, the court finds no reason to reopen the evidentiary hearing based on Mr. Schwarting's urging that the video contains evidence which discredits the court's findings of fact and conclusions of law. The court admitted the video into evidence and reviewed it in its entirety prior to issuing its report and recommendation. The court weighed the evidence contained within the video along with the testimony of the live witnesses.

Despite a thorough factual discussion and analysis in the report and recommendation and order on the previous motion to suppress, Defendant argues that the following would undermine the court's determination that there was probable cause to arrest and search the defendant:

1. The video records officers placing handcuffs on him and asking defendant where his wallet is. Officer Visan states that the Defendant's wallet is in the Jeep and agents are heard searching the Jeep. Defendant asserts this is contrary to Agent BJ George's testimony.

2. The video records the initial arrest at a Mobile Gas Station; then the same scenario is played out minutes later in front of the Ramkota Hotel. Defendant asserts that the officers re-enacted the arrest at a different location.

3. The video depicts four marked police vehicle leaving the scene, which is contrary to Agent George's testimony that initial police presence consisted of he and Officer Duane Baker.

> 4. The video contradicts Agent George's testimony that Defendant consented to the search of his person.

(Doc. 249 at pp. 18-20). In considering Mr. Schwarting's Third Motion to Suppress (Doc. 248), the court has again watched and listened to the approximately three-hour long video and read the 111-page transcript of the evidentiary hearing. Not only does the court find that Mr. Schwarting's interpretation of the video inaccurate and out of context, the court further finds that nothing contained within the video as proffered by Mr. Schwarting has any substantive impact on the court's previous holdings.

As discussed in the district court's order, the stop the vehicle was supported by reasonable suspicion given the corroborated evidence arising from the arrest and questioning of Mr. Harold and Ms. Pentilla. The district court further found that the arrest was supported by probable cause given the corroborated evidence arising from the arrest and questioning of Mr. Harold and Ms. Pentilla. (Doc. 239 at p. 25). The previous investigation, not the video, provided this probable cause.

Mr. Schwarting briefly discusses that his 10-year-old child was "illegally seized, displaced and subjected to a de-facto arrest where he was held without a warrant for over two hours." (Doc. 249 at p. 30). However, Mr. Schwarting cites no authority and the court is unaware of any which would undermine the court's finding that Mr. Schwarting's arrest and search was constitutionally permissible. The court finds no merits to this cursory discussion raised by Mr. Schwarting.

## CONCLUSION

The evidence as proffered by Mr. Schwarting is of little to no value in ruling on the Motions to Suppress. The court finds that Mr. Schwarting's third motion to suppress and the request for an evidentiary hearing is simply an attempt to get a second bite of the apple. For the foregoing reasons, it is hereby

ORDERED that the motion for an evidentiary hearing is DENIED. It is further.

RECOMENDED that the that based on the reasons stated in the previously-issued Report and Recommendation (Doc. 163), and in the district court's Order (Doc. 239), and in this Report and Recommendation, that the Defendant's Third Motion to Suppress is DENIED.

## NOTICE TO PARTIES

As to the Order denying the motion for an evidentiary hearing, pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CRIM. P. 58(g)(2); 59(a). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. FED. R. CRIM. P. 59(a). Objections must be timely and specific in order to require review by the district court.

As to the Report and Recommendation portion of this opinion, the parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 24th day of July, 2018.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge